UNITED STATES of America, Plaintiff–Appellee,

v.

Elizabeth REID, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Lucy BOYLAN, Defendant–Appellant.

Nos. 90–5485, 90–5793.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1990.

Decided April 9, 1991.

Joseph John McCarthy, Dawkins, Hanagan, McCarthy & Sengel, P.C., Alexandria, Va., for defendants-appellants.

Gordon Dean Kromberg, argued, Sp. Asst. U.S. Atty., (Henry E. Hudson, U.S. Atty., on brief Alexandria, Va.), for plaintiff-appellee.

Before ERVIN, Chief Judge, HALL, Circuit Judge, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.

ERVIN, Chief Judge:

Elizabeth Reid and Lucy Boylan were both arrested for driving while intoxicated on the George Washington Memorial Parkway. Each was given a breathalyzer test and was subsequently convicted. On appeal, each asserts that the breathalyzer test constituted an unlawful search and seizure under the Fourth Amendment because her test was administered without a warrant. We assume that a breathalyzer test is a search for purposes of this appeal. However, we find that an exception to the warrant requirement exists thereby making the breathalyzer test a reasonable search which does not violate the Fourth Amendment. Therefore, we affirm the convictions of Reid and Boylan.

## I.

### A.

On November 29, 1989, at around 12:11 a.m., a police officer saw Reid's truck enter the southbound portion of the George Washington Memorial Parkway from the Interstate 395 ramp. The Parkway had a 40 mile per hour speed limit on that portion of the road. Reid accelerated to 60 miles per hour, then moved to the center lane of traffic and accelerated to 65 miles per hour. The officer followed Reid for about one minute. During that time, Reid rode the center line and veered across the lane of traffic to the curb. The police officer then stopped Reid.

The officer smelled alcohol on Reid's breath when he stopped her. He asked her to perform three field sobriety tests. She failed all three: the horizontal gaze nystagmus test, the one-legged stand test, and the walk and turn test. The officer then arrested Reid and took her to the local Park Police station. The officer advised Reid that 36 C.F.R. § 4.23 required her to submit to a blood alcohol test or she would face the criminal charge of refusal. Conviction of refusal, which violates 36 C.F.R. § 4.23, carries a penalty of a fine of $500, or imprisonment not exceeding six months, or both. The officer then requested that Reid submit to a breathalyzer test. Reid consented to the test, signing a statement entitled "Notice to Person Arrested for Operating under the Influence of Alcohol and/or Drugs."

At 1:17 a.m. and 1:23 a.m., the officer administered two breath tests. Reid's alcohol level was tested at a level of .144 and .148 in those tests. Reid was arrested for driving while under the influence of alcohol (DUI) and driving with a breath alcohol content of .10 or more, in violation of 36 C.F.R. § 423.

At trial, Reid moved to suppress the results of the breathalyzer test on the ground that the test was a warrantless search in violation of the Fourth Amendment. The magistrate judge denied the motion, and Reid was convicted on a conditional plea of guilty under Fed.R.Crim.P. 11(a)(2) to the charge of Driving While Intoxicated (DWI). Reid appealed to the district court, which affirmed her conviction. Reid then appealed to this court.

### B.

On September 29, 1989, a police officer observed Boylan traveling southbound on the George Washington Memorial Parkway at approximately 12:35 a.m. Boylan was in the right hand lane ahead of the police officer, just before the road merged into the left lane. The officer expected Boylan to merge into the left lane; however, she did not merge until after she drove fifty feet into the safety zone. Boylan was driving only 35–40 miles per hour in a 50 mile

per hour zone. Where the road became two lanes again, Boylan continued to drive in the left hand lane at speeds 10–15 miles below the posted limit. Boylan turned on her right turn signal, but did not change lanes for three-quarters of a mile. The police officer then stopped Boylan, believing that she was either very tired or intoxicated. The officer smelled a heavy odor of alcohol when he talked with Boylan.

The officer gave Boylan four field sobriety tests: reciting the alphabet in English, the one-legged stand test, the horizontal gaze nystagmus test, and the walk and turn test. She failed all four tests. The officer then arrested Boylan and took her to the Park Police Station. He advised her that if she refused to take a breathalyzer test, she could be charged with refusal. Boylan consented to the test and scored a .207 blood alcohol level. Boylan was arrested for impeding traffic, disobeying a road marking, and DWI in violation of 36 C.F.R. §§ 4.13(b), 4.12 and 4.23(a)(2), respectively.

At trial, Boylan moved to suppress the evidence of her breathalyzer test on the ground that the test was a warrantless search in violation of the Fourth Amendment. The motion was denied by the same magistrate judge who presided in the Reid case. Boylan was convicted, and she appealed to the district court, which affirmed her conviction. Boylan appealed to this court, and her appeal was consolidated with Reid's appeal.

## II.

Reid and Boylan argue that the breathalyzer tests amounted to warrantless searches in violation of the Fourth Amendment. They base their argument on two grounds: (1) that the search was not proper under either the exigent circumstances or search incident to lawful arrest exceptions to the warrant requirement; and (2) that their "consent" to the tests was coerced and not valid. We note at the outset that an appellate court is not bound by the district court's conclusions of law and may properly review the conclusions *de novo*. *Rawl v. United States,* 778 F.2d 1009, 1014 n. 9 (4th Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). Thus, we address the issues raised on appeal *de novo*.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment does not proscribe all searches and seizures; it proscribes unreasonable ones. *Skinner v. Ry. Labor Exec. Ass'n,* 489 U.S. 602, 618, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989). Usually, a search or seizure is not reasonable unless it is accomplished pursuant to a warrant issued upon probable cause. *Id.* at 619, 109 S.Ct. at 1414. However, the Supreme Court has recognized certain exceptions to the general rule when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987) (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 351, 105 S.Ct. 733, 747, 83 L.Ed.2d 720 (1985)). "When faced with such special needs, [the Court has] not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable cause requirements in the particular context." *Skinner,* 489 U.S. at 619, 109 S.Ct. at 1414.

The Supreme Court has stated that "subjecting a person to a breathalyzer test, which generally requires the production of alveolar or 'deep lung' breath for chemical analysis, implicates concerns about bodily integrity" and "should be deemed a search." *Skinner,* 489 U.S. at 616–17, 109 S.Ct. at 1412; *Burnett v. Municipality of Anchorage,* 806 F.2d 1447, 1449 (9th Cir. 1986). We assume for purposes of this appeal that a breathalyzer test is, indeed, a search. Therefore, in order for the breathalyzer test to be reasonable under the Fourth Amendment, a warrant is required unless one of the exceptions to the warrant requirement is present.

### III.

One exception to the warrant requirement for a reasonable search under the Fourth Amendment occurs when there are exigencies in a situation which make exemption from the warrant requirement "imperative." *New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981). Exigent circumstances were present in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). There, the police had reason to believe that a driver, who had been involved in an accident, was intoxicated. The driver was being treated at a hospital, and he refused to consent to a blood-alcohol test. The police ordered the doctor to perform the test anyway. The Supreme Court upheld the warrantless search:

> The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking, as the body functions to eliminate it from the system. Particularly in a case such as this where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was not time to seek out a magistrate and secure a warrant.

*Schmerber, supra*, 384 U.S. at 770–71, 86 S.Ct. at 1835–36. In *Skinner*, the Supreme Court reiterated the notion that time is of the essence when there is a need to test alcohol in the body when it stated that "the delay necessary to procure a warrant nevertheless may result in the destruction of valuable evidence." 489 U.S. at 623, 109 S.Ct. at 1416.

Reid and Boylan argue that the police should have gotten a warrant via the telephone as allowed by Fed.R.Crim.P. 41(c)(2). Because of this procedure, they assert that no exigency existed. At first blush, this argument is convincing. However, analysis of the intricate requirements of Rule 41(c)(2) shows that the existence of the rule does not alter the exigency of the situation.

Rule 41(c)(2)(B) requires that the police prepare a document known as "a duplicate original warrant" *before* calling the magistrate judge. Rule 41(c)(2)(B) also requires that the police must read the document verbatim to the magistrate judge. The magistrate judge must enter verbatim what is read to him onto a document known as the original warrant. Rule 41(c)(2)(D) requires the magistrate judge to place under oath the police officer requesting the warrant and anyone whose testimony forms a basis of the application. Further, Rule 41(c)(2)(D) requires the magistrate judge to record the conversation if a voice recording device is available; otherwise, the magistrate judge must arrange for a stenographic or longhand verbatim record to be made. Obviously, compliance with these rules takes time. Time is what is lacking in these circumstances:

> [A]lcohol and other drugs are eliminated from the bloodstream at a constant rate, and blood and breath samples taken to measure whether these substances were in the bloodstream when a triggering event occurred must be obtained as soon as possible.

*Skinner*, 489 U.S. at 623, 109 S.Ct. at 1416.

Drunk driving is a grave problem in society today. The Supreme Court has "repeatedly lamented the tragedy." *South Dakota v. Neville*, 459 U.S. 553, 558, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983). "No one can seriously dispute the magnitude of the drunken driving problem or the states' interest in eradicating it. Media reports of alcohol-related deaths and mutilation on the Nation's roads are legion." *Michigan State Police v. Sitz*, —— U.S. ——, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). In light of its concern about drunk driving, the Supreme Court has upheld: (1) the forcible extraction of blood over the defendant's objection, *Schmerber*, 384 U.S. 757, 86 S.Ct. 1826; (2) blood tests and breath tests for employees involved in train accidents as required by federal regulations, *Skinner*, 489 U.S. 602, 109 S.Ct. 1402; (3) sobriety check points set up on the roads to catch drunk drivers, *Sitz*, 110 S.Ct. 2481; and (4) admission of a defendant's refusal

to take a breathalyzer test as evidence in a DWI trial, *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

The Supreme Court has noted that breathalyzer tests are less intrusive than blood tests, and the Court upheld blood tests as not violating the Fourth Amendment. *Skinner*, 489 U.S. at 625, 109 S.Ct. at 1417. Blood tests may reveal personal facts other than the presence of alcohol; breath tests "reveal the level of alcohol in the employee's bloodstream and nothing more." *Id.*

██ Society has a recognized interest in protecting its citizens from drunk drivers. Breathalyzer tests cause a lesser intrusion than blood tests. Time is of the essence when testing for alcohol in the bloodstream. The combination of these factors sets out exigent circumstances which are sufficient to require that the police be allowed to test drunk drivers without first having to obtain a warrant. Because of the exigent circumstances of the situations, the searches of Reid and Boylan were reasonable even though there were no warrants.

### IV.

Another exception to the warrant requirement which is present in these cases is the search incident to a lawful arrest. *See United States v. Edwards*, 415 U.S. 800, 802–03, 94 S.Ct. 1234, 1236–37, 39 L.Ed.2d 771 (1974). The Supreme Court has explained this exception as follows:

> It is the fact of the lawful arrest which establishes the authority to search, and we hold in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). The exception has been traditionally justified by the need to search for weapons, instruments of escape, and evidence of crime. *Edwards*, 415 U.S. at 802–03, 94 S.Ct. at 1236–37; *Preston v. United States*,

376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964).

██ In the present case, the defendants were lawfully arrested at the time they were searched. In both instances, the defendants were stopped because they were driving in a suspicious manner. The police noticed that each defendant smelled of alcohol. Each defendant failed the field sobriety tests: Reid failed three and Boylan failed four. Both defendants were then arrested and taken to the station. The crime of DWI presents a unique situation in that the most reliable evidence of whether a person is driving while "legally drunk" is contained in that person's body. 36 C.F.R. § 4.23 provides that a person commits a crime if she drives while she has a breath alcohol content of .10 or more. The best means of obtaining evidence of the breath alcohol content, and the least intrusive way of testing, is the breathalyzer test. Given that the defendants were legally arrested at the time of the search, these limited intrusions to prevent the destruction of evidence were not unreasonable, as they were searches incident to lawful arrests.

### V.

Reid and Boylan challenged their convictions on the grounds that their consent was coerced and was therefore invalid. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). They reasoned that their consent was tainted because they were informed that if they did not consent, they could be charged with "refusal," which is a crime under 36 C.F.R. § 4.23 and is punishable by either a $500 fine, imprisonment for six months, or both. Because we have found that two other exceptions to the warrant requirement exist which render the searches reasonable in this case, we need not address this issue.

### VI.

In conclusion, two of the exceptions to the warrant requirement existed when Reid and Boylan were arrested which made the breathalyzer tests administered to them

reasonable under the Fourth Amendment: (1) exigent circumstances, and (2) search incident to a lawful arrest. Either of these theories would support a finding that the searches of these women were reasonable. Therefore, we find that the breathalyzer tests administered in these cases were reasonable, and the convictions of Reid and Boylan are hereby affirmed.

AFFIRMED.