IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 11, 2008

Charles R. Fulbruge III
Clerk

No. 07-60116
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JERRY E JACKSON

Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Mississippi
3:06-CR-94-1

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Jerry E. Jackson ("Jackson") was ticketed on the Natchez Trace Parkway by United States Park Service Ranger Jerome Timmons on November 5, 2005, for operating a motor vehicle under the influence of alcohol. See 36 C.F.R. § 4.23(a)(2) (stating that operation of a motor vehicle is "prohibited while . . . the alcohol concentration in the operator's. . . breath is 0.08 grams or more of alcohol . . . per 210 liters of breath"). Jackson pleaded not guilty to this offense

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and proceeded to trial before a magistrate judge ("MJ"). The government's case relied on the testimony of Ranger Timmons and the results of a breathalyzer test conducted by Timmons using an Intoxilyzer 8000 machine, which showed Jackson's breath alcohol level to be above the legal limit. Jackson did not move to exclude the Intoxilyzer's test results. At the close of the government's evidence, Jackson moved for acquittal under Rule 29. See FED. R. CRIM. P. 29. Jackson did not present any evidence of his own at trial. Jackson argued that the Intoxilyzer results, and Ranger Timmons' testimony were not sufficient to establish his guilt beyond a reasonable doubt. The MJ denied the motion and found Jackson guilty based solely on the results of the Intoxilyzer, and the testimony of Ranger Timmons related to the Intoxilyzer testing.[1] Jackson appealed his conviction to the district court. The district court affirmed, applying the same standard we apply here. See United States v. Jackson, 470 F. Supp. 2d. 654 (S.D. Miss. 2007). Jackson now appeals the district court's judgment, arguing again that the test results and Ranger Timmons' testimony regarding the Intoxilyzer are insufficient to support his conviction.

Jackson moved for acquittal at the close of the government's evidence, which was the close of all evidence. In this circumstance, we review a sufficiency challenge de novo, asking whether a rational trier of fact "could have found the defendant guilty beyond a reasonable doubt." United States v. Mitchell, 484 F.3d 762, 768 (5th Cir. 2007); see Jackson v. Virginia, 443 U.S. 307, 319 (1979). "The evidence . . . must be considered in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility

---

[1] Ranger Timmons also testified as to his observations when Jackson exited his vehicle and testified as to Jackson's failure to satisfactorily complete field sobriety tests. According to Timmons, these confirmed his belief that Jackson was intoxicated. Jackson also admitted to consuming a quart of "King Cobra" within the preceding five hours, and to having "a few sips" of alcohol from the open container that his wife had in the vehicle. However, the MJ did not consider Timmons' observations in finding Jackson guilty. Instead, the MJ stated that he would rely solely on the testimony concerning the Intoxilyzer test and its results in determining Jackson's guilt.

choices." United States v. Inocencio, 40 F.3d 716, 724 (5th Cir. 1994). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence." United States v. Espinoza-Seanez, 862 F.2d 526, 536 (5th Cir. 1988).

Under 36 C.F.R. § 4.23(a)(2), the government must prove that Jackson was operating a motor vehicle while his breath alcohol concentration was 0.08 grams or more of alcohol per 210 liters of breath. The regulation further states that tests done for the presence of alcohol "shall be determined by and administered at the direction of an authorized person." 36 C.F.R. § 4.23(c)(3). "Any test shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use." Id. at (c)(4). Ranger Timmons testified that he received formal training in the operation of the Intoxilyzer 8000 and that he had been administering tests using the machine for approximately eight months. Timmons testified that a Mississippi State Trooper manually checks the machines used by the Park Rangers on a monthly basis. Timmons also testified that the Intoxilyzer 8000 contains a self-calibration check which runs before and after each breathalyzer test is administered. According to Timmons' testimony, this is an improvement over the 5000-model which required manual calibration. If the Intoxilyzer detects an error during the self-calibration check, the machine will not function. Timmons testified that the Intoxilyzer 8000 performed the self-calibration checks and functioned as expected when he tested Jackson's breath alcohol content. Consistent with standard operating procedure, Ranger Timmons was required to wait twenty five minutes before testing Jackson))the machine is pre-programmed to require this observation time before it will allow an officer to administer the test. Timmons had Jackson blow twice on the Intoxylizer. Jackson's first breath sample registered 0.099, and his second 0.084, both above the legal limit.

On cross-examination, Timmons admitted that during his training he was told that the Intoxilyzer had a margin of error, but he could not recall the margin of error. He also stated that he was not aware of the last time that his machine was checked by a State Trooper, although the norm was once a month. On appeal, Jackson argues that Timmons' lack of knowledge as to the last manual calibration of his machine, and his lack of knowledge concerning the Intoxilyzer's margin of error, sufficiently undermine the reliability of the Intoxilyzer results such that a rational fact finder would have a reasonable doubt as to Jackson's guilt.

Based on the evidence at Jackson's trial, we affirm his conviction. Timmons' testimony established that he was "authorized" and "certified" to operate the Intoxilyzer 8000. 36 C.F.R. § 4.23(c)(3) and (4). The test results admitted at trial were the result of "accepted scientific methods and equipment of proven accuracy and reliability." 36 C.F.R. § 4.23(c)(4); see, e.g., California v. Trombetta, 467 U.S. 479, 489 n. 9 (1984) (recognizing that accuracy of Intoxilyzer has been certified by the National Highway Traffic Safety Administration); United States v. Brannon, 146 F.3d 1194, 1196 (9th Cir. 1998) (same); United States v. Reid, 929 F.2d 990, 994 (4th Cir. 1991) (stating that breathalyzer is the "best means for obtaining evidence of the breath alcohol content"); Volk v. United States, 57 F. Supp. 2d 888, 897 (N.D. Cal. 1999) ("The methodology of the Intoxilyzer has achieved wide acceptance within the scientific community."). Timmons' testimony established that the Intoxilyzer 8000 runs automatic calibration checks before and after each test, disabling the machine if anything is wrong, and that the machines used by the Park Rangers were manually checked on a monthly basis by the Mississippi State Troopers. Both breath samples provided by Jackson registered levels above the legal limit. The evidence produced at Jackson's trial, when taken in the light most favorable to the verdict, provides the necessary support for a rational trier of fact to find

Jackson guilty beyond a reasonable doubt. Timmons' inability to recall the machine's specific margin of error, or the time when his particular machine was last manually checked do not lead us to overturn the verdict reached by the magistrate judge.

Accordingly, we AFFIRM the judgment of the district court.