**JEROME RAWLINS, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2011-0062

Supreme Court of the Virgin Islands

March 1, 2013

KELE C. ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

**OPINION OF THE COURT**

(March 1, 2013)

HODGE, *Chief Justice.* Appellant Jerome Rawlins appeals from the Superior Court's August 3, 2011 Judgment and Commitment, which adjudicated him guilty of driving under the influence of an intoxicating liquor, in violation of section 493(a)(1) of title 20 of the Virgin Islands Code, and operating a motor vehicle while having 0.08 percent or more

by weight of alcohol in his blood, in violation of section 493(a)(2) of title 20. For the reasons that follow, we affirm Rawlins's convictions, but vacate his sentence and remand the matter for re-sentencing.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On May 11, 2010, the People of the Virgin Islands filed a criminal complaint against Rawlins, charging him with violations of sections 493(a)(1) and (2) of title 20 as a result of a traffic accident that occurred on May 2, 2010. The Superior Court conducted a jury trial on May 25, 2011. At trial, the People presented testimony from Kerry Rhymer, an officer employed by the Virgin Islands Police Department, who testified that he was dispatched to an auto collision on Norre Gade on St. Thomas at approximately 1:44 a.m. on May 2, 2010. (J.A. 59.) On direct examination, Rhymer testified that Rawlins identified himself as the driver of the Vitara, and Rhymer observed a "high odor of alcohol emanating from his breath," and noticed that Rawlins was staggering and "unable to maintain his balance to the point that he actually was leaning up on . . . the police car." (J.A. 63-65.) Rhymer testified that he administered field sobriety tests to Rawlins, which he failed, and that as a result he and another officer, Sergeant Roslyn Jarvis, brought Rawlins to the Traffic Bureau, where he observed Jarvis administer an alcohol breath analysis test to Rawlins using a "breathalyzer" machine[1] that established his blood alcohol content as 0.183 percent. (J.A. 69, 73-76.) However, on cross-examination, Rhymer acknowledged that he had also interviewed Inez Martinez — the driver of the Jeep — and issued her a traffic citation based on his conclusion that she, and not Rawlins, had been negligent and

---

[1] We use this term to refer to widely-used and certified alcohol breath testing machines such as the Breathalyzer (manufactured in recent decades by Smith & Wesson and National Draeger, Inc.), or the Intoxilyzer (manufactured by CMI, Inc. ) that was used in this case (J.A. 162), and similar machines. *See United States v. Brannon*, 146 F.3d 1194, 1196 (9th Cir. 1998) ("Twenty-five years ago breathalyzers were certified as accurate by the National Highway Traffic Safety Administration of the Department of Transportation. Their methodology is well-known and unchallenged."); *United States v. Reid*, 929 F.2d 990, 994 (4th Cir. 1991) ("The best means of obtaining evidence of the breath alcohol content, and the least intrusive way of testing, is the breathalyzer test."); Standard for Devices to Measure Breath Alcohol, 38 Fed. Reg. 30,459, 30,459 (Nov. 5, 1973). Alcohol breath tests have been generally recognized as reliable since at least 1973. *See California v. Trombetta*, 467 U.S. 479, 489 n.9, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (common recognition of the Intoxilyzer device).

caused the auto collision. (J.A. 89-92.) Specifically, Rhymer concluded that Martinez had entered into Rawlins's lane in order to avoid hitting a third vehicle that had been illegally parked. (J.A. 92-94.)

The People also called Jevon Thompson, a passenger in Martinez's vehicle, as a witness. During his testimony, Thompson stated that he observed a vehicle swerving left to right towards Martinez's vehicle until it hit the passenger side, (J.A. 107-08), and that after the collision the driver of the other vehicle was "staggering," spoke with slurred speech, appeared disoriented, and seemed to be intoxicated based on his demeanor. (J.A. 110-11.) Additionally, the People presented testimony from Jarvis, who outlined her qualifications, (J.A. 130-33), and stated that she administered the field sobriety tests to Rawlins at the Traffic Bureau, (J.A. 129-30), which he failed. (J.A. 136, 139, 143.) She also testified to her training and experience in conducting breathalyzer tests and how one operates the breathalyzer machine, (J.A. 144-47, 156-57), and explained that the machine she used to administer the test had been calibrated on May 1, 2010. (J.A. 150.) Moreover, Jarvis explained that the breathalyzer machine determines the individual's blood alcohol content by measuring the alcohol content of a person's breath, (J.A. 151-55), and testified that she administered the breathalyzer test to Rawlins at 3:29 a.m. on May 2, 2010, and that the test produced a 0.183 result. (J.A. 160, 164.) Nevertheless, on cross-examination, Jarvis indicated that she had not taken any courses to determine the correlation between breath and blood alcohol content, and does not know how the machine works in that regard. (J.A. 173.)

After the People rested its case, Rawlins called as a defense witness his wife, who testified that he had left their house at around 10:30 p.m. to pick up their daughter, that he had not been drinking, staggering, or speaking with a slurred voice before he left, and that he often walks "zig-zag" with his toes up. (J.A. 198-200.) Additionally, she testified that when he telephoned her after the accident, he did not speak with a slurred voice, and that he did not stagger, stumble, or slur his speech when she picked him up after posting bail on his behalf. (J.A. 209-12.) In fact, she testified that she had not seen Rawlins drunk since 1987 or 1988. (J.A. 216-17.)

Finally, Rawlins testified on his own behalf. During his testimony, Rawlins stated that the other vehicle had hit him when it entered his lane to avoid the third vehicle that had been illegally double parked. (J.A. 228.) According to Rawlins, he stopped his vehicle when he saw the other

266

vehicle approach him because "one of us had to stop . . . for the other to pass," but the other vehicle was "coming so fast" and hit the right side of his vehicle. (J.A. 229.) Rawlins further testified that Rhymer failed to properly instruct him as to what tasks he was supposed to perform to pass part of the field sobriety test and claimed that other portions of the test were never administered at all. (J.A. 242-43.) Moreover, Rawlins testified that at the police station Jarvis made him blow into the breathalyzer three times, having told him that "[n]othing happened" when he blew into it and that the result was negative, (J.A. 247, 252), and that he did not receive a copy of the results of the breathalyzer test until his advice of rights hearing, at which point he wondered how it could show a positive result when it had previously been negative. (J.A. 249-50.) When asked on cross-examination why Thompson would testify that his speech was slurred, Rawlins stated the passengers in the other vehicle had threatened to beat him that night and would lie to protect Martinez. (J.A. 258, 260.) Additionally, Rawlins testified that he only had one beer on his way home from work between 6:00 p.m. and 7:30 p.m., and that he subsequently drank no alcoholic beverages. (J.A. 265-66.)

Ultimately, the jury found Rawlins guilty of both counts. In addition, the jury issued a special verdict finding that Rawlins had been involved in a traffic accident while driving under the influence of alcohol. The Superior Court orally sentenced Rawlins at a July 8, 2011 hearing, where it imposed, on each count, a punishment of one year of imprisonment — with all but 15 days suspended — as well as one year supervised probation and a $500 fine, all to run concurrently except for the $500 fines. Rawlins timely filed his notice of appeal on July 15, 2011, and the Superior Court subsequently memorialized its decision in an August 3, 2011 Judgment and Commitment.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court. . . ." V.I. CODE ANN. tit. 4 § 32(a). An order is considered to be "final" for purposes of this statute if it "ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment." *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011). *See also Potter v. People*, 56 V.I. 779,

787 (V.I. 2012) (in a criminal case, a written judgment embodying the adjudication of guilt and the sentence based thereon constitutes a final judgment for purposes of 4 V.I.C. § 32(a)). Because the Superior Court's August 3, 2011 Judgment and Commitment is a final judgment, we have jurisdiction over Rawlins's appeal.

Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we view all issues of credibility in the light most favorable to the People. *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). If " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' " we will affirm. *DeSilvia v. People*, 55 V.I. 859, 865 (V.I. 2011) (quoting *Mendoza v. People*, 55 V.I. 660, 666-67 (V.I. 2011)). The evidence offered in support of a conviction "need not be 'inconsistent with every conclusion save that of guilt, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt.' " *Mulley v. People*, 51 V.I. 404, 409 (V.I. 2009) (quoting *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1996)). A defendant seeking to overturn his conviction on this basis bears " 'a very heavy burden.' " *Latalladi*, 51 V.I. at 145 (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)).

When a criminal defendant fails to object to a Superior Court decision or order, this Court ordinarily only reviews for plain error, provided that the challenge has been forfeited rather than waived. *See* V.I.S.Ct.R. 4(h); *see also Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). For this Court to reverse the Superior Court under the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). However, even "[i]f all three conditions are met," this Court may reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 390-91.

## B. Conviction on Count One

In his appellate brief, Rawlins contends, on numerous grounds, that this Court should set aside or otherwise alter[2] his conviction for Count One, driving under the influence in violation of section 493(a)(1) of title 20. Each argument is addressed in turn.

### 1. Duplicity of Count One[3]

 Rawlins, for his first issue on appeal, contends that Count One of the criminal complaint is duplicitous because it purportedly charges him with violating two distinct sections of the Virgin Islands Code. Count One reads, in its entirety, as follows:

> On or about May 2, 2010, in St. Thomas, Virgin Islands, **JEROME RAWLINS, SR.**, drove, operated or was in actual physical control of a motor vehicle over and along the public highways of the Territory of the Virgin Islands while under the influence of an intoxicating liquor and became involved in a traffic collision, in violation of V.I. CODE ANN. tit. 20 § 493(a)(1) **[DRIVING UNDER THE INFLUENCE OF AN INTOXICATING LIQUOR]**

(J.A. 20.) Although Count One only explicitly references section 493(a)(1) of title 20, Rawlins implies that the phrase "became involved in a traffic

---

[2] In his appellate brief, Rawlins implies that all of these alleged errors entitle him to having his conviction for Count One vacated. However, as we explain in greater detail below, every challenge to his conviction on Count One relates to section 493(b)(1) of title 20, which merely enhances the sentence the Superior Court must impose on a defendant convicted of violating section 493(a)(1) of title 20. Therefore, even if any of Rawlins's challenges to his conviction on Count One were successful, the appropriate remedy would not be setting aside the conviction, but remanding the matter for re-sentencing. *See Ambrose v. People*, 56 V.I. 99, 108 (V.I. 2012).

[3] Although this issue is the first issue discussed in Rawlins's brief, the People's brief fails to even acknowledge the issue, let alone respond to it with legal argument. However, "the parties cannot stipulate to the law, especially in a situation such as this where the decision may impact other pending or future cases." *Matthew v. Herman*, 56 V.I. 674, 682 (V.I. 2012). Moreover, since Rawlins failed to raise this issue during the Superior Court proceedings, it is he that possesses the burden of establishing that reversal is warranted under the plain error standard of review. *See United States v. Olano*, 507 U.S. 725, 734-35, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (clarifying that government has burden of proof under harmless error standard, while defendant has burden under plain error standard). Thus, the People's failure to adequately brief the issue, without more, cannot constitute grounds for reversing Rawlins's conviction.

collision" invokes section 493(b)(1) of title 20, which he argues constitutes a wholly separate criminal offense.

■■ "Duplicity is the joining in a single count of two or more distinct and separate offenses," which results in a "general verdict of guilty" that may fail to safeguard the defendant's right to be free from double jeopardy, frustrate appellate review, or otherwise prejudice the defendant. *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975). However, a count is not duplicitous if the second statute invoked does not establish a separate criminal offense, but merely imposes an enhanced penalty for the initial charge. *See United States v. Di Pasquale*, 864 F.2d 271, 279-80 (3d Cir. 1988).

■■■ We hold that Count One is not duplicitous, for section 493(b)(1) does not establish a separate offense, but only codifies the punishment for a violation of section 493(a)(1). The pertinent provisions of section 493 provide as follows:

> (a) (1) It is unlawful for any person who is under the influence of an intoxicating liquor or a controlled substance included in Schedule I, II, III, IV, or V of section 595, chapter 29, Title 19, Virgin Islands Code, or under the combined influence of an intoxicating liquor and such a controlled substance, to drive, operate, or be in actual physical control of, any motor vehicle within the Territory. . . .
>
> (b) (1) *Any person convicted of a first violation of subsection (a) hereof*, shall be guilty of a misdemeanor and shall be punished by imprisonment for not more than one year, or by a fine of not less than three hundred dollars, or by both. *Provided, however*, if the person was involved in an accident violating subsection (a), the *minimum fine* shall not be less than five hundred dollars.

20 V.I.C. § 493(a)(1), (b)(1) (emphases added). Despite the plain language of section 493(b)(1), Rawlins insists that it codifies a separate crime simply because the requirement that the defendant be involved in an accident is not set forth in section 493(a)(1). However, a sentence enhancement — by its very nature — will necessarily require proof of an additional element that is not a part of the underlying crime. *Cf. Ambrose v. People*, 56 V.I. 99, 105 (V.I. 2012) (holding that unlawful possession of a firearm "during the commission of a crime of violence" is not a separate crime from unlawful possession of a firearm, but merely a sentence enhancer for that offense). There-

270

fore, Count One properly charged Rawlins solely with violating section 493(a)(1).

## 2. *Apprendi and Special Verdict Challenges*

■ In his appellate brief, Rawlins designates two issues that appear to wholly contradict each other. First, Rawlins contends that applying section 493(b)(1) to his case violated the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which, with some exceptions not relevant to this case, requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." But this is precisely what the Superior Court did in this case, when it required the jury to issue a special verdict as to whether Rawlins was involved in a traffic accident at the time he violated section 493(a)(1). (S.A. 2.) Nevertheless, Rawlins also contends that the special verdict is itself invalid because neither the Virgin Islands Code nor any of the rules applicable to criminal cases tried in the Superior Court authorize a jury to issue a special verdict.

■ Rawlins has failed to explain how either alleged error meets the requirements for reversal under the plain error standard of review. If Rawlins is correct that *Apprendi* — a case involving a state criminal prosecution where the decision was based on a portion of the United States Constitution found applicable to the states — precludes imposing the enhanced penalty found in section 493(b)(1) absent a specific finding by the jury, then *Apprendi* itself provides the authority for submitting the question of whether Rawlins was involved in an accident to the jury. However, even if *Apprendi* is inapplicable to this case, any error in submitting this question to the jury — as opposed to the judge adjudicating the issue — could not have affected Rawlins's substantial rights, given that every single witness, including Rawlins himself, conceded that Rawlins had been involved in an accident. *See Francis*, 52 V.I. at 393 (holding substantial rights not implicated when defendant concedes or stipulates to an element of the offense). Consequently, we decline to engage in an extensive discussion of the merits of either issue, since Rawlins is not entitled to any relief pursuant to either theory.

## 3. *Constitutional Challenge*

Rawlins also challenges the constitutionality of the portion of section 493(b)(1) which prescribes an enhanced penalty for defendants involved

271

in an accident.[4] Specifically, Rawlins contends that section 493(b)(1) violates his substantive due process rights and is also void for vagueness and as overbroad because the statute "makes it a crime to be involved in an accident without more." (Appellant's Br. 25.) While Rawlins acknowledges that "[t]he ultimate objective of Section 493(b)(1), if any, is to reduce drunk driving," he argues that "[t]he requirement that everyone who is involved in an accident must suffer enhanced punishment, whether they caused the accident or not[,] is too sweeping," for the statute purportedly "prohibits a substantial amount of inherently innocent activity, yet the provision does not contain an element of criminal intent or, in the alternative, a sufficient number of exceptions to reasonably define its scope." (Appellant's Br. 27-28.) In other words, Rawlins believes that the statute "has no rational connection to protecting the public from drinking," and thus "is an unreasonable exercise of the police power and unconstitutional on its face." (Appellant's Br. 28.)

As a threshold matter, we note that section 493(b)(1) does not, in any way, criminalize "inherently innocent activity," for the statute itself provides that the enhanced penalty only applies "if the person was involved in an accident *violating subsection (a).*" 20 V.I.C. § 493(b)(1). Thus, section 493(b)(1) only implicates individuals who are involved in an accident after driving, operating, or otherwise controlling a vehicle while "under the influence of an intoxicating liquor or a controlled substance." As the United States Court of Appeals for the Third Circuit has observed, "courts have recognized for over half a century that driving 'under the influence' is commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and

---

[4] In its appellate brief, the People solely address the issue of whether the phrase "under the influence" as used in section 493(a)(1) is unconstitutionally vague. However, it is readily apparent from Rawlins's brief that he is not challenging the constitutionality of the "under the influence" language in section 493(a)(1), but the constitutionality of the portion of section 493(b)(1) which provides that an individual who violates section 493(a)(1) and is involved in an accident is subject to a $500.00 minimum fine. But yet again, the People's complete failure to brief the issue actually raised by Rawlins cannot justify reversing Rawlins's conviction, given that we review this issue solely for plain error. *See Matthew*, 56 V.I. at 682; *Olano*, 507 U.S. at 734-35. Importantly, while Rawlins cites to pages 179 and 180 of the Joint Appendix for the proposition that this issue was raised during the Superior Court proceedings, plain error review is nevertheless appropriate because those pages only reflect that Rawlins's trial counsel objected to admission of the breathalyzer test results, and the record contains no evidence that Rawlins ever objected to section 493(b)(1) on constitutional grounds.

272

control." *Gov't of the V.I. v. Steven*, 134 F.3d 526, 528, 39 V.I. 466 (3d Cir. 1998) (collecting cases). "This common understanding is consistent with the obvious purpose of drunk driving statutes; *i.e.*, to prevent people from driving unsafely due to an alcohol-induced diminished capacity." *Id.* It is for this very reason that a Pennsylvania appellate court rejected an identical challenge to a DUI statute that imposed an enhanced penalty even if the defendant did not cause the underlying accident:

> Similarly, appellant contends that [the statute] increases the length of ARD related suspension of driving privileges based upon whether there was an accident resulting in bodily injury or property damage, regardless of whether the accident was the DUI offender's fault. Surely the essential purpose of the DUI legislation is to prevent bodily injury and property damage caused by drivers under the influence of drugs and alcohol. We speculate that the legislature may not have imposed a requirement that the DUI offender be determined to be at fault for the accident before enhancing penalties based upon an accident, because it may have concluded the individual, while not technically determined to be at fault, likely shares some of the blame due to his intoxicated state. Further, the legislature may not have deemed it necessary to engage in that line of inquiry. Put simply, if a person drives under the influence of drugs or alcohol and is in an accident involving bodily injury or property damage, the protection therefrom being the essential purpose of the DUI law, then that person has risked the harshest of penalties. Since we find these purposes to be genuine, we cannot declare this "classification" to be void.

*Commonwealth v. McCoy*, 895 A.2d 18, 36 (Pa. Super. Ct. 2006). Given (1) that Rawlins frames his argument based on his mistaken belief that section 493(b)(1) codifies a separate crime distinct from section 493(a)(1); (2) the absence of any binding authority declaring section 493(b)(1) or a similar enactment unconstitutional; and (3) the existence of case law upholding the constitutionality of similar statutes in other jurisdictions, we hold that Rawlins has failed to meet his burden under the plain error standard of review. *See Murrell v. People*, 54 V.I. 338, 366 (V.I. 2010) (explaining that an error is "plain" only if the error is clear under current law, and thus "there can be no plain error where there is no precedent . . . directly resolving it.") (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003)). Accordingly, we affirm Rawlins's conviction as to Count One.

273

## C. Conviction on Count Two

Rawlins also challenges, on sufficiency of the evidence grounds, his conviction on Count Two, operating a motor vehicle while having 0.08 percent or more by weight of alcohol in his blood, in violation of section 493(a)(2) of title 20. According to Rawlins, he was "convicted by proof of alcohol in his breath," and "[t]here was no expert or other testimony that showed that the result of the breath examination was the same thing as a blood content test," and therefore "there was insufficient evidence to convict in this case by some distance." (Appellant's Br. 28.) In support of his claim, Rawlins relies upon Jarvis's admission during cross-examination that she does not know the technical details of how the breathalyzer machine calculates blood alcohol content based on the amount of alcohol in an individual's breath, (J.A. 173), as well as several statements made by the trial judge with respect to her training.

The record does reflect that the trial judge, at the conclusion of the People's case, expressed — outside of the presence of the jury — concern over Jarvis's testimony, and also stated that "[i]f [Rawlins's trial counsel] had objected, I would have excluded the [results of the breathalyzer] test" because the judge believed the People failed to establish its admissibility under Federal Rule of Evidence 803. (J.A. 184.) However, Rawlins has not argued, as part of this appeal, that the Superior Court should not have permitted Jarvis to testify or should not have admitted the results of the breathalyzer test — rather, Rawlins solely argues that the evidence is insufficient to sustain a conviction on Count Two because the People failed to introduce expert testimony explaining precisely how a breathalyzer machine calculates blood alcohol content. As we have previously explained, "when an appellate court reviews, the sufficiency of the evidence, it must 'consider all the evidence the [jury] had before it, including any evidence that is later determined to be inadmissible.' " *Ambrose*, 56 V.I. at 107 (quoting *State v. Frazier*, 622 N.W.2d 246, 261 (2001)). "This is because 'if the evidence were determined to be insufficient, it would be unfair to the People because other evidence might have been produced by the [prosecutor] at trial if the questioned evidence had been excluded there.' " *Id.* (quoting *People v. Sisneros*, 44 Colo. App. 65, 606 P.2d 1317, 1319 (1980)). Therefore, to determine whether to

sustain Rawlins's conviction on Count Two, this Court may not simply set aside Jarvis's testimony or the results of the breathalyzer test.[5]

 Applying this legal standard, the People clearly introduced evidence sufficient to convict Rawlins of operating a motor vehicle while having 0.08 percent or more by weight of alcohol in his blood. Even though she could not explain the technical details of how the machine operates, Jarvis explained that the breathalyzer determines the individual's blood alcohol content by measuring the alcohol content of a person's breath, (J.A. 151-55), that she administered the breathalyzer test on Rawlins at 3:29 a.m. on May 2, 2010 — almost two hours *after* the accident — and that the test identified his blood alcohol content as 0.183 percent. (J.A. 160, 164.) This evidence, if it is viewed — as it must be — in the light most favorable to the People, establishes that Rawlins's blood alcohol content exceeded 0.08 percent at the time he operated his motor vehicle. Therefore, we affirm Rawlins's conviction on Count Two.[6]

### D. Sentence

Finally, Rawlins urges this Court to overturn the sentences which correspond to his convictions. Specifically, Rawlins argues that the Superior Court's decision to impose separate sentences for the convictions under both section 493(a)(1) and section 493(a)(2) violates the "one crime, one punishment" rule of section 104 of title 14. The People agree, and join Rawlins in requesting that this Court remand this matter for resentencing.

 Section 104, which provides greater protections than the Double Jeopardy Clause of the United States Constitution, provides that

---

[5] As noted above, we do not interpret the arguments in Rawlins's brief as a challenge to the admissibility of Jarvis's testimony or the results of the breathalyzer test. However, even if we were to charitably interpret Rawlins's fleeting statement that he was "convicted by proof of alcohol in his breath" as such a challenge, we note that the Legislature has explicitly authorized the government to prove a defendant's blood alcohol content by performing a chemical analysis of the defendant breath. *See* 20 V.I.C. § 493a(a) ("the amount of alcohol in the person's blood at the time alleged *as shown by chemical analysis of the person's breath,* blood or urine, shall give rise to the following presumptions . . . .") (emphasis added).

[6] In his appellate brief, Rawlins also argues that he should receive a new trial due to the cumulative error doctrine. However, since the Superior Court committed no errors that would warrant reversal with respect to either of his convictions, the cumulative error doctrine is wholly inapplicable to this case. *Nicholas v. People,* 56 V.I. 718, 750 n.24 (V.I. 2012).

> An act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. *An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.*

14 V.I.C. § 104 (emphasis added). Thus, "[t]he plain language of section 104 indicates that despite the fact that an individual can be charged and found guilty of violating multiple provisions of the Virgin Islands Code arising from a single act or omission, that individual can ultimately only be punished for one offense." *See Williams v. People*, 56 V.I. 821, 832 (V.I. 2012). While — as is true of every other issue raised on appeal — Rawlins failed to lodge a contemporaneous objection during the Superior Court proceedings, we have already held that a complete failure by the Superior Court to apply section 104 will typically satisfy all four prongs of the plain error standard of review. *Id.* at 432-34 (collecting cases).

■ We agree with the parties that, in this particular case, Rawlins's acts of driving under the influence and operating a motor vehicle with a blood alcohol content of 0.08 percent or greater clearly arose from "an indivisible course of conduct" and were part of an indivisible state of mind or coincident error of judgment, given that both offenses arose from the single act of operating an automobile after having consumed an excessive amount of alcohol. *Id.* at 832-34. Therefore, we remand this matter to the Superior Court with instructions to sentence Rawlins for only one offense, refund any excess fine that has been paid, and dismiss the remaining count.[7] *Id.* at 834 n.9.

### III. CONCLUSION

For the foregoing reasons, we affirm both of Rawlins's convictions, but remand this matter for resentencing in accordance with title 14, section 104.

---

[7] In this case, the record reflects that Rawlins has fully served his sentence for both charges, and has been discharged from probation. (J.A. 14-15.) Consequently, unlike the procedural posture presented in *Williams*, in the present case there is no need for the Superior Court to impose a stay after it decides which offense warrants punishment.